So let's begin with case number 20-3901, Laguerre v. National Grid USA. We'll hear first from the appellant, Mr. Schwartz. Good morning. Everybody hear me? Yes. Yes. Okay. In two years, we've all become so technically proficient. Your Honor, this is- Speak for yourself. Or more technically proficient. I can't challenge my kids, though. This case is unique. I think you don't get too many ADA cases, which usually involves a disability which continues for life. It's not about temporary disabilities, where the employer doesn't accommodate the employee, and the judge below found that giving her an unpaid leave was not an accommodation, where the papers are submitted, the argument has occurred, then the employee miraculously gets accommodated, and then the court rules as a matter of law that it was not possible to accommodate the employee, which is what happened here. She's actually working at the moment, and has been for the last year and a half, doing exactly what we said was at least an issue of fact in this case. What is it that you want, then, in terms of remedy? Well, she wasn't working from around 2016 until 2020, so there is a back pay liability. What I think is also interesting, in terms of whether we consider what happened after oral argument, is that the company now hasn't brought anybody back. They actually leased out their call center, and everybody's working from home. What we raised as a fact issue, we had actually, by the time we raised it in our brief, plaintiff wasn't working at home. We had put in an affidavit from her union president saying that it was plausible to do that, that calls were transferred all the time, and the court relied on... Can I ask you a question about that? Is there a difference between transferring calls to another call center and to an employee's home for purposes of recording? I don't know if there are security measures that need to be done. As it turns out, there isn't, because they were able to do this in two weeks when the city shut down in March 2020. The union would not allow its operators, its CSRs, to work in the call center. Within two weeks, they had come up with a system to do that, and so proficiently that, as I said, the evidence would show if we reopened the records that the call center has now been rented out. They don't even have it anymore. But your evidence at the time of, I guess, in 2016, you're sort of presenting information in hindsight in response to a global pandemic, which I don't know proves the existence of the reasonable accommodation, and that was her burden to show back in 2016. Well, I think it was our burden to show that it was a factual issue. The only evidence that the court relied on below on that issue, and I want to be clear, we didn't say this was the only accommodation, right? There were other ways of accommodating the plaintiff appellant that the company could have engaged in, but what the court relied on was the testimony of a human resources person who said she had consulted the legal and health services teams. She didn't say she consulted the people in tech. Well, let me flip the question. I think the burden was on you to establish the availability of an accommodation, and as I read the record, the only thing that was presented in real time was the testimony of Ms. Constance Bradley, who was not a technology person, and who said, basically, I don't see why this couldn't be done. Is that a fair characterization of what was presented? No, she didn't say she didn't see. She said it is done all the time, and that the calls are transferred to other locations all the time. She said calls are transferred, and she couldn't see why it couldn't be done, couldn't be recorded, right? And she said there was no reason it couldn't be done in Ms. Laguerre's case, and in fact, I think that my burden on the summary judgment motion, as opposed to a trial, my burden on the summary judgment motion to say there's an issue of fact, and that's the critical, I mean, that's what we're appealing here, summary judgment, not a determination of a judge or a jury after trial. Our burden was to show there was an issue of fact. The court relied on... An issue of fact as to the elements that you have the burden of showing. Right, and all that the court relied on was a testimony of a Ms. Demchek, who's a human resources person, and who said she consulted legal and health services, and that consultation was not, it was black, it's in the record, it's blacked out. We weren't allowed to see it during discovery because they said it was protected, attorney-client discussion, and that's what the court relied on. That's not any better, frankly, than the testimony, in fact, I think it's less good, I don't know if that's good English, than what Ms. Bradley said, who worked in the call center for 25 years. She wasn't just opinionating as a union president defending her member, she was a call center representative for 25 years before she was a union official, and she discussed how calls are transferred all the time. And the fact that, although judge you say something they did during global pandemic, but in fact they were able to do it within two weeks, which meant the technology existed, they didn't invent it, they didn't invent it, they came up with it, they did what they should have done with Ms. Laguerre in that two-week period of time, and it's worked so well that it continues to be used now almost two years later with 200 people. And Ms. Laguerre is back at work, that's why I said this is unique, because it's rare that you lose in a failure to accommodate case, but the person winds up being accommodated. Why did they need us to look at what happened in the pandemic? I mean, it strikes me that if your argument is they never presented any evidence that the technology wasn't available, it might have presented evidence that they didn't have it yet, but they didn't say it was unavailable in the marketplace, they didn't present any evidence that procuring it would be an undue hardship. Why isn't that enough to get you past summary judgment, regardless of whether we look at the pandemic? No, I think, right, I think that the evidence that the court below relied on, which was Ms. Demchik's statement, Ms. Demchik is a lovely person, but she's an HR person. She said, I consulted with legal and health services. She didn't say I consulted with tech services. That's what her testimony is. Just so I'm clear on the facts, my understanding was that your client did not request to work from home until June of 2016, and that one of the problems was that she wanted to transfer to the special services team and there were no vacancies. Her request for accommodation from her doctor first said would be better off working from home. And then I think in 2017, he said, can return to work from home. So it got, her condition got gradually worse. This case goes back, I think the judge cut us off somewhere in the middle of 2016, which was 300 days before we filed the EEOC charge. But so the work from home and the special services work are two different things. There were other jobs, the special services, which was less stressful, which would involve not having, you know, calls coming in your entire time and you're sitting there and people, irate people, you know, yelling at you and telling you their gas is off, their bill is wrong, whatever. Special services, AMO, all these other jobs involved making calls to customers working on a system that would be less stressful, which these were jobs she had done before. So for an extended period of time, the company claimed it couldn't find them. And the biggest, I think the biggest weakness in their position, besides that their case relies on Ms. Demchak, is the fact that they didn't engage in the interactive process that the regulations and the statute call for. And if they had engaged, and the judge said, the judge below said it was plaintiff's burden to identify a job. That's not what the regulations say. The regulations say that if plaintiff suggests a job, that triggers the interactive process, which is supposed to be a real back and forth, looking at jobs, looking at possibilities, looking at options. There's nothing in the record that shows that, that shows a couple of meetings, Ms. Demchak being central to one. And in fact, there could have been other options like special services, like asking, you know, like, including Ms. Bradley says in her affidavit, if they had come to the union and said, we want to transfer her, can she transfer to special services? And can somebody move out of there? The union would have asked somebody, the interactive process is not, it's supposed to be somewhat flexible. There's supposed to be some room in here, not, you have to pick a job and identify it. And that's it. And the court said, I think she miscited the law by saying that that was what the employee, the plaintiff has to do. Oh, am I not on video? Your video is turned off, but we can hear you. Now we can see you, but you're also three, almost four minutes. You've reserved three minutes for rebuttal. It's fine, we heard every word. Let's hear from the appellee, Mr. Collins. Should I go up now? Uh, yeah, you can mute yourself. Thank you, Your Honor. Can you all hear me okay? Yes, thank you. Thank you, Your Honor. May it please the court, my name is Patrick Collins, the firm of Ogletree, Deakins, Nash, Smokin, Stewart, attorneys for the appellee National Grid USA. The court below, uh, properly granted summary judgment to the appellee, to National Grid in this case. The court properly described the central issue here as the availability of positions that plaintiff was capable of performing at or around the time of the requested accommodation, not at the time of a global pandemic that created unique circumstances of which we're all sadly familiar and is ongoing, but at the time of the request for the accommodation and the accommodations requested, as, as, uh, my brother Schwartz just mentioned is not only to work from home, but also to work in a less stressful position. Uh, the, the, the, the court, uh, found correctly that, uh, it's undisputed that plaintiff has a disability. Uh, plaintiff has lupus. It's a chronic lifetime disease. As Mr. Schwartz said, uh, the court did not find that National Grid never accommodated her. In fact, the court found the National Grid did accommodate her with extensive periods of leaves of absence over five years straight at one point, preserving her seniority and her rate of pay. What the court said was nonetheless, that's not the accommodation that she's seeking here, which of course is correct. She's seeking an accommodation that would involve a job that doesn't involve taking customer calls because that can cause flare ups in her condition, irate customers, complaining customers, that sort of thing. And she wanted a job that didn't involve a commute from her home in New Jersey to the Brooklyn call center where about 200, at least, employees worked handling calls and related activities, uh, at the time in question. Uh, now this is just not just a regular, you know, this is not just the Amazon call center. Uh, this is a call center that's mandated by law and by the regulations of the New York State Department of Public Service. National Grid is a gas and electric utility throughout the Northeastern U.S. If I can, I understand the central issue here to be whether there's a the availability of reasonable accommodation. And I guess my question for you is, is that, does that turn on whether, uh, the technology at issue was available, uh, at the time in 2016, or whether it was easily, uh, accessible, um, um, whether they had it or not. Does that make sense? I think I understand your honest question. Um, there's not much in the record on the, on the fine details of the technology. The company's obligated, and this is why I mentioned this is not just any old call center. The company's obligated by law to record all calls. Gas is a combustible commodity. These calls include emergency calls, people who smell gas, their house could explode. There could be other drastic loss of life. Uh, the company's also taking billing calls, uh, all manner of calls from customers, no heat calls, no, no, no gas calls. And so the company is obligated to record every call and is obligated to be able to connect to its proprietary billing system, which includes confidential personal information about customers. It, it, it's, it's undisputed that never has the company prior to 2020 implemented any kind of technology that will allow it in accordance with its obligations under state law to have calls taken at home and access to its system done at home. Whether the, we're not saying your honor that the technology theoretically might not be divisible. And in fact, no, that's not the question. Ms. Bradley testified. It seemed like that, that the technology was there and, um, she didn't, I did the way I read it. She didn't see why it could be done. Calls are forwarded, calls are recorded. And so, uh, I think your adversary's argument is that that is evidence that there's at least an issue of fact as to whether this was in fact reasonably available. Well, Ms. Bradley did. I'm sorry. Ms. Bradley's affidavit didn't say that this technology was available. Ms. Bradley testified that the company was able to move calls among three different call centers in the, in the Northeastern U S not that anyone was ever able to, uh, have that technology set up in a home office or home environment. She said she didn't see any reason why that couldn't happen. That's far different from saying it could happen or it had happened or that the technology was available to the company at that time, sufficient to meet its obligations under state law. What I'm struggling with, tell me if I'm understanding the argument, right. There's undisputed evidence in your view that the company did not at that time have the technology to immediately implement, to allow the plaintiff to work at home. Is that right? Yes. In 2016, 2017. Correct. And so why isn't that like saying to the person in the wheelchair, I'm sorry, I can't accommodate your request for access because we don't have a ramp. Doesn't the ADA contemplate sometimes that an employer is going to have an affirmative obligation. If it doesn't impose an undue hardship to procure and implement technologies that aren't currently part of its portfolio, isn't that the whole point of the ADA? Uh, that is part of the point of the ADA, your honor, but it's, uh, I would suggest a little more nuanced than that. The plaintiff's burden here is to show that, uh, she could perform the essential functions of the position at or about the time the accommodation was sought. Um, a ramp into a workplace would not be the same, for example, as, as a ramp into the home. An employer would have no obligation to provide a ramp, uh, to Ms. Laguerre's home, nor did have any obligation to provide a cane, a wheelchair, devices that would assist her in her ordinary life. Um, the court below found that working from home, I'm sorry, that physical attendance in the workplace was an essential function of the job. And we believe that is correct. Uh, because notwithstanding that the company was looking into develop this ability to shift calls out of the call center, and that is in the, in the record as well, it was not at the point where it could implement it for the entire call center or for a single individual. It was not, there's no, there's no evidence that a single individual, as opposed to the call center as a whole, um, that this, this technology could be, could be implemented in the way that a plaintiff is suggesting. Is it your position then that it's the plaintiff's burden to go find a tech expert and identify the products on the market that might potentially be adopted by you too? Is it her obligation to do that work or having identified working at home as an accommodation that, uh, that she was able to do that work? And I'm wondering if you folks to determine not only whether you had it within your existing technological portfolio, but whether you could, without undue hardship, accommodate that request technologically by procuring something, if you didn't already have it. Well, it was her obligation. It was her burden to come forward at some evidence, uh, to rebut the company's evidence. And, and it's not just, uh, my brother keeps referring to a human resources professional. It was also a senior supervisor in the call center who testified similarly that because of the nature of the company's obligations in handling emergency calls and the customer systems that it had, it could not at that time transfer, simply transfer calls to the, to an individual's home. So she has come forward with no evidence to suggest that that is wrong. She simply said, well, that's a call center supervisor. That's a human resources representative. It is not, in other words, the company's burden to bring an expert forward, a technological expert to buttress the undisputed record testimony. And again, Ms. Bradley's affidavit doesn't go about that. She just says, I don't see any reason why, uh, that's not a, that's not a, a, a putting that fact in, in contest that it wasn't available. Can I, uh, get some clarity on a, on a slightly different point? She, as I understand it is not only that you want to work from home, but you wanted not to be involved in stressful calls. And of course, as you pointed out, many of the calls you get are stressful calls, emergencies, complaints, um, and so forth. Uh, uh, what jobs were available had vacancies that didn't involve stressful calls? None, no jobs at the time. And none have been identified by the plaintiff. Um, again, there's much speculation contained in plaintiff's papers in that regard, but not a single job has been identified. Plaintiff also put certain conditions on her job search, understandable ones, but it limited her ability to find other, other, other jobs. She would not take less pay. She wanted to preserve her union seniority. Um, she only, she only really want to focus on this special services job. And, and, and I should point out, there's really no issue of fact that there are different jobs, distinct jobs within the call center, even though all the call center representatives have the same union title. There's no dispute that there are at least five distinct jobs. She wanted one of those. She mentioned Judge Rakoff, it would have allowed her to step back from the difficult calls and as well to work from home because she would not be on the phones in the way that she would with her, um, the job she's always held, which is in what's called an incoming, handing incoming calls as a customer service representative. So there were no jobs ever identified. Is it your position? I'm, I think I might be confused about the accommodations because in my mind, I was, I was seeing two sort of independent categories of accommodations. One was a different job, which may or may not allow me to work at home, but that doesn't involve the stress. And the other was continuing to do the inbound calls, but doing it from home. Am I understanding you to argue that as a matter of undisputed fact, that second accommodation was not a request on the table. It only existed in combination with a different job description as well? Yes, she, she, she had both requests on the table at the same time. Were they interdependent? In other words, did you understand, um, her to be taking the position that though I'd like a different job, I, I am ready, willing and able to do the job I'm currently doing, taking the inbound customer calls, if I can do it from my home, you're saying that's not as a matter of undisputed fact, that wasn't an option, uh, on the table in 2016. That was not our understanding of what she wanted in 2016, which is why she repeatedly and often through her union sought to find a job on the special services team, because it would have satisfied potentially both those criteria and also allowed her to preserve her pay rate and her union seniority. But unfortunately there were very few jobs and there were none that were vacant at any of the period in question. And that's, and that's undisputed again. Okay. Thank you. I'm out of time. Thank you. Um, Mr. Schwartz, you've reserved three minutes for rebuttal. You're muted. Now I'm on the screen and now I'm not mute. Okay. Um, first of all, the, the court below, and I wanted to spend a lot of time in this at, uh, SPA 10 and 11 said, um, that the long-term leave was not an effective accommodation. So to say that that was an accommodation is not true. And the court found that it's not true. Um, also the, what, what Mr. Collins says about the, they only obligated from 2016 to 17. The part of the, what's unique about this case is that plaintiff wasn't terminated. So their obligation didn't end when she filed her EEOC charge, their obligation didn't end when she filed her lawsuit, that their obligation was ongoing, which is why in fact, she went back to work in 2012. Uh, so they're basically saying there was no, there was no effect. There wasn't a single job available between the initial request. The judge let us go back to January, 2016, January, 2016 and January, 2020, not a single job available that she could have done. And in Ms. Bradley's deposition and Ms. Laguerre's deposition, she talked about all these other positions that could have been available. And it's, they're saying we had to identify that when they were open. And that's, that's, that's where, that's where the burdens, and that's one of the factual issues here. The, the, the, when she started suggesting positions, she didn't have to watch their employee, uh, database to see where there were openings. They had an obligation once she started suggesting positions to work with her to find a position that she could do, whether it was working from home, which they said wasn't available or whether it was one of these other types of jobs that involved. Can I pause you the working from home part? I think Mr. Collins, what I just heard him to say was that at the time, one of the requests was not, can I keep doing what I'm doing just from home? Surely you guys can route the calls to my house and record them. That's not, that's not what the record says. The record shows that her medical notes starting in 2016 first said, uh, would be better off working from home. And in 2017 says you can return to work from home. I can't cite the page number, but that's definitely in the, in the, in the record. I don't quite understand the argument you were making a minute ago. You're saying that someone in her position can go to the company and say, uh, I want the following accommodations. And if you don't have, uh, a vacancy too bad, create a new job. No, I didn't say that. Well, that's what I heard you say, but go ahead. Correct me then. Okay. The, the, the regs and the statute talk about an interactive process, which means working together to look at different possibilities. Look at the job database. This is a company, it's not five person company. This is a company with 1600 union positions. Uh, look at the openings, look at the jobs, look at your capabilities. Uh, and, and, uh, uh, you know, and I just want to throw in one other thing. You don't get to the interactive process. If I until you identify the availability of an accommodation, isn't that until you suggest that the employee doesn't have the burden, the court below. So the employee has a burden of identifying a job before they have to engage in the director process. I don't think that's what the case law says. We've talked about it in our more in our reply brief and the, um, with one thing on, on, on SPA 13, where the judge talks about the basis for her finding that there was, uh, an undisputed factual, uh, question that there was no technology available. It's on SPA 13. She relies on the STEM check who said her testimony, this is an HR person was supported by consultation with members of the legal and health services teams. That is not a consultation that should result in a technology technological finding a fact as a matter of law, that it wasn't possible, which is why they did it so fast in 2020, um, and continue to do it to this day. And I was going to say, you know, we have a state law. She, she sent us back to state court on our state claims. We're allowed to bring that in now in the state court, which is odd, right? In state court, we can say this happened in 2020 and 2021 and 2022 and in federal court, we can't. So I think that was an error on the part of the district court. Thank you very much. This has been interesting to do. Thank you. Council. Uh, we'll take the matter under advisement. The next.